# IN THE COURT OF APPEALS OF IOWA

No. 25-1209
Filed December 3, 2025


**IN THE INTEREST OF A.B.,**
**Minor Child,**

**J.B., Mother,**
        Appellant.
_____


Appeal from the Iowa District Court for Wapello County, Richelle Mahaffey, Judge.


A mother appeals the termination of her parental rights under Iowa Code section 232.116(1)(f) and (*l*) (2025). **AFFIRMED.**


Patricia J. Lipski, Washington, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Sarah Wenke, Ottumwa, attorney and guardian ad litem for minor child.


Considered without oral argument by Ahlers, P.J., and Badding and Sandy, JJ.

**SANDY, Judge.**

This case concerns the minor child A.B., born in 2019. The mother appeals the termination of her parental rights to A.B., pursuant to Iowa Code section 232.116(1)(f) and (*l*) (2025). She contests the grounds for termination and argues termination is not in A.B.'s best interests given their strong bond and the mother's recent progress. We affirm.

## I. Background Facts & Procedural Posture.

The Iowa Department of Health and Human Services (HHS) became involved with A.B. and the mother in June 2023 following reports that the mother was using methamphetamine while caring for the child.[1] HHS located A.B. in the care of a fictive kin caregiver, identified as the paternal aunt of A.B.'s half-brother, with whom A.B. had been residing for approximately one month. The mother acknowledged her methamphetamine use and agreed to a safety plan keeping A.B. in the aunt's care while she engaged in services.

On July 23, 2023, the mother absconded with A.B. during a supervised visit. An ex parte removal order was entered the following day, and A.B. remained continuously in fictive kin care thereafter. A.B. was adjudicated in need of assistance on August 22, and disposition occurred on October 10. Over the following year, the mother participated intermittently in substance-use and mental-health treatment, family-centered services, and visitation. She experienced repeated relapses and several unsuccessful treatment discharges through early 2024.

---

[1] The father, K.V., consented to termination of his parental rights.

In May 2024, the mother was admitted for residential treatment but was discharged in July for violating program rules. At the July permanency hearing, the court granted both parents a six-month extension toward reunification. In early 2025, the mother relapsed and reentered treatment in January, which she successfully completed in May 2025. Shortly before the termination hearing, the mother disclosed that between July and December 2024, she had been in a violent relationship involving drug and alcohol use and that she had concealed this period of instability from HHS and the Family Treatment Court team.

The State filed a petition to terminate parental rights on May 7, 2025, under Iowa Code section 232.116(1)(a), (b), (e), (f), and (l). A combined termination of parental rights and permanency review hearing was held on May 23 and June 6, 2025. At the time of the termination hearing, the mother had obtained housing, employment, and continued outpatient treatment, and her visits with A.B. had progressed to extended and overnight visits. Witnesses acknowledged her progress and her loving relationship with A.B., though concerns remained about her honesty, long-term sobriety, and stability outside structured environments.

On June 19, 2025, the juvenile court entered an order terminating the mother's parental rights under Iowa Code sections 232.116(1)(f) and (l), finding that A.B. could not be safely returned to her custody and that termination was in the child's best interests. The court determined that HHS had made reasonable reunification efforts, that the mother's recent progress was insufficient given the two-year history of the case, and that A.B. required permanency with her current caregiver, who expressed a desire to adopt.

The mother filed a motion to enlarge or amend the ruling on July 7, 2025, which the court denied. She filed her notice of appeal on July 24, 2025. In her petition on appeal, the mother argues that the State failed to prove by clear and convincing evidence the statutory grounds for termination and that termination is contrary to the child's best interests given their strong bond and the mother's recent progress. The State's response maintains that termination was supported by clear and convincing evidence under Iowa Code sections 232.116(1)(f) and (*l*), that permanency through adoption serves A.B.'s best interests, and that guardianship is not an appropriate alternative.

## II.  Standard of Review.

Our review in termination-of-parental-rights cases is de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). We follow a three-step process of determining (1) whether the State has established a statutory ground for termination under Iowa Code section 232.116(1); (2) whether the State has established that termination of parental rights is in the children's best interests after applying the framework in section 232.116(2); and (3) whether a permissive exception under section 232.116(3) should be applied. *In re L.A.*, 20 N.W.3d 529, 532 (Iowa Ct. App. 2025) (en banc). We do not address any steps not challenged by a parent. *Id.* After addressing any challenged steps, we then address any additional claims raised by a parent. *Id.*

## III.  Analysis.

### A.  Statutory Grounds

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(f) and (*l*). When the juvenile court terminates on multiple

grounds, we can affirm based on any ground supported by the record. *Id.* We focus on paragraph (f). Section 232.116(1)(f) permits termination of parental rights upon clear and convincing proof that (1) the children are four years old or older; (2) the children have been adjudicated CINA; (3) the children have been removed from the parent's physical custody for at least twelve of the preceding eighteen months; and (4) the children cannot be returned to the parent's custody at the time of the termination trial.[2]

The mother contests only the fourth element. She argues that her participation in a number of services created an environment in which A.B. could be safely returned to her custody. These services include substance-use treatment (inpatient and outpatient), drug testing, mental-health treatment, proper supervision and age-appropriate parenting skills, safe and stable housing, and a bond with the child. We disagree. While it is true that the mother showed periodic patterns of stability and sobriety, sustained consistency was missing throughout the course of the two-year case. One extension had already been granted in recognition of the mother's periodic progress. Yet the sustained stability necessary to safely achieve reunification continued to elude the mother.

Further, we "[can]not ask a child to wait longer for permanency on the mere hope of a parent's improvement." *In re S.M.*, No. 24-0811, 2024 WL 3518080, at *4 (Iowa Ct. App. July 24, 2024); *In re J.S.-M.*, No. 21-0927, 2021 WL 4304213,

---

[2] Section 232.116(1)(f)(4) refers to not being able to return a child to the parent's custody "at the present time," which our appellate courts interpret to mean at the time of the termination trial. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" in section 232.116(1)(h)(4) to mean at the time of the termination trial).

at *3 (Iowa Ct. App. Sept. 22, 2021) (affirming the juvenile court's refusal "to delay permanency 'on the mere hope' that the father would soon learn to become a self-sufficient parent"); *see also In re B.A.*, No. 11-1507, 2011 WL 5868301, at *2 (Iowa Ct. App. Nov. 23, 2011) (affirming termination when the father's "progress was not sufficient to show more than a mere hope that he might eventually be able to parent the child safely and consistently").

Based on the mother's long history of using illegal substances, and her struggle to achieve sobriety, we agree with the trial court that there exists clear and convincing evidence A.B. could not be returned to the mother's custody without exposing A.B. to harm amounting to a new child in need of assistance adjudication or without A.B. remaining a child in need of assistance. *In re S.C.*, No.15-0262, 2015 WL 2089743, at *2 (Iowa Ct. App. May 6, 2015). The mother had not demonstrated an ability to maintain her sobriety outside of the structured environment that residential treatment affords nor consistent stability in housing and employment. *In re G.L.*, No. 21-1970, 2022 WL 951074, at *2 (Iowa Ct. App. March 30, 2022) ("Achieving stability in a structured setting is far different than addressing challenges with drug use without that support.").

The juvenile court properly found sufficient evidence supported termination of the mother's parental rights pursuant to Iowa Code section 232.116(1)(f).

## B. Best Interests

The mother also contends the juvenile court erred by concluding that terminating her parental rights to A.B. was in the child's best interests. When making a best-interests determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of

the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2).

In addressing the mother's best interests argument at trial the juvenile court gave this well-reasoned analysis:

> In applying §232.116(2), "a court should base its best interest determination on the legislative requirements contained [therein], rather than the court's own value system."  *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010).  This means that the Court must base its best interest determination on considerations "to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code §232.116(2) (2016).  The "defining elements" of the best-interests analysis are the child's safety and "need for permanent home."  *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).
>
> The Court should also consider a parent's past performance in light of what it may allow the Court to predict about their future performance.  [*In re* ]*J.H.*[,] 952 N.W.2d [157,] 173 [(Iowa 2020)] ("we look to [Dad's] past performance because it may indicate the quality of care [he] is capable of providing in the future." (quoting *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006))); [*In re*] *A.B.*[,] 815 N.W.2d [764,] 778 [(Iowa 2012)]; [*In re*] *Dameron*[,] 306 N.W.2d [743,] 745 [(Iowa 1981)].
>
> "In determining the future actions of [a] parent, [their] past conduct is instructive."  *In re Z.S.*, No. 15-1535, 2016 WL 757419, at *2 (Iowa Ct. App. Feb. 24, 2016).  The Court looks at the years of evidence available in [the mother's] past conduct.  Based on this evidence, the Court cannot conclude it is likely that in the foreseeable future [the mother] will be able to meet [A.B.'s] need for safety, and stability, and her urgent need for a permanent home.
>
> [The mother's] severe substance use disorder has only just begun to be addressed.  [A.B.] cannot be safely returned to any parent today, or in the foreseeable future.  [A.B.] is well cared for in [fictive kin's] home, and [fictive kin] is able meet [A.B.'s] long-term needs for safety, love, and security—a task which [fictive kin] has already done for the last two years.  In considering the child's safety, the best placement for furthering the long-term nurturing and growth of the child, and her physical, mental, and emotional condition and needs, the Court finds termination of parental rights is in [A.B.'s] best interests.

(First, sixth, seventh, sixteenth, and seventeenth alterations in original.)  This sums up the best-interests-of-the-child analysis accurately, and no worthwhile purpose would be served by us repeating the same analysis and conclusion using different words.  Following our de novo review, we agree with the juvenile court's analysis on this issue.  We accordingly reject the mother's challenge to the juvenile court's decision to terminate her parental rights.

**AFFIRMED.**